# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JOHN ERIC AMOS | ) | Chapter 7 |
| | ) | Case No. 17-29016 |
| Debtor. | ) | |
| _____ | ) | Judge A. Benjamin Goldgar |
| BMO HARRIS BANK N.A. | ) | |
| Plaintiff | ) | |
| v. | ) | Adversary Proceeding No. 18-_____ |
| | ) | |
| JOHN ERIC AMOS a/k/a | ) | |
| RICK AMOS | ) | |
| Defendants. | ) | |

**COMPLAINT OBJECTING TO DISCHARGE AND DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(2)(B), 11 U.S.C. 727(a)(4)(A), 11 U.S.C 727(a)(2)**

NOW COMES Plaintiff BMO Harris Bank N.A. ("BMO") by and through its attorneys, Scott Frost and Daniel S. Rubin of the law firm of Howard & Howard Attorneys PLLC, and for its Complaint against John Eric Amos a/k/a Rick Amos ("Amos" or "Debtor"), Objecting to Discharge pursuant to 11 U.S.C. 727(a)(4)(A) and 11 U.S.C. 523(a)(2)(B), and states as follows:

## JURISDICTION AND VENUE

1. This is an adversary proceeding brought in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure.

2. This Adversary Complaint is a "core proceeding" under 28 U.S.C. §157(b)(2)(I) and 28 U.S.C. §157(b)(2)(J).

3. Venue in this District is proper pursuant to 28 U.S.C. §1408 and 28 U.S.C §1409(a).

## FACTS COMMON TO ALL COUNTS

4. Amos is an individual residing at 1181 Gavin Court in Lake Forest, Illinois (the "Property").

5. Amos lives with his wife, Sherry Amos, at the Property.

6. Amos has three children – Kelly L. Amos, Jordan A. Amos, and Ashley N. Amos.

7. Prior to June 9, 2017, Amos owned a certain 2013 Range Rover Sport HSE VIN SALSK2D4XDA771280 (the "Land Rover") free and clear of all liens and encumbrances.

8. Amos is the founder and chief executive officer of Physika Investments, LLC ("Physika"), an online marketplace for trading precious metals.

9. Amos is the Chairman of Amos Media Company ("Amos Media"), a multimillion dollar multimedia publishing company that publishes Linn's Stamp News, Scott Catalogue, and Coin World publications, as well as other publications that serve the coin collecting and stamp collecting industries.

10. Amos graduated from Miami University (Ohio) with a Bachelor of Science Degree in Finance and Marketing.

11. Amos served on the Miami University Athletic Department Advisory Board and is a former member of the Miami University Farmer School of Business Advisory Council. In addition he has served as a board member for the Miami University Foundation, the official fundraising and gift-receiving entity for Miami University (Ohio).

12. At all times stated in this Complaint, Amos was a member of Rainy Day, LLC ("Rainy Day").

13. At all times stated in this Complaint, Amos held the majority ownership of Rainy Day.

14. Rainy Day is the majority owner in various ventures run by Amos himself, including Physika and Amos Development Ltd. ("Amos Development"), a real estate holding company.

15. As a man who holds a degree in finance, a CEO of a multimillion dollar media company, a real estate investor, a board member for a highly regarded university and an investor in many

other industries, Amos is a financially sophisticated individual who understands the necessity of providing accurate financial information to stake holders, including lenders and potential lenders.

16. As of September 30, 2013, Rainy Day was obligated to pay to Fifth Third Bank ("Fifth Third") the amount of $1,500,000.00 plus accrued interest and other fees pursuant to a certain Revolving Note dated September 30, 2013 and a Loan and Security Agreement dated February 5, 2010 (the "Fifth Third Loan").

17. As of September 30, 2013, Amos was personally liable for and was obligated to pay sums due to Fifth Third under the Fifth Third Loan pursuant to the terms of a certain Personal Guaranty dated September 30, 2013 (the "Fifth Third Guaranty") whereby Amos unconditionally guaranteed the repayment of all debts owed to Fifth Third Bank from Rainy Day.

## **COUNT I**
Objection to Dischargeability - 11 U.S.C. 523(a)(2)(B)

18. BMO Harris restates and realleges Paragraphs 1 through 17 of the Complaint as if fully restated herein.

19. In late 2014, Amos himself applied for a personal line of credit from BMO.

20. As part of the loan application process, BMO requested from Amos a complete accounting of his assets and liabilities.

21. On or about January 20, 2015, Amos supplied a credit application (the "Application") to BMO attesting to his assets and liabilities.

22. In conjunction with the Application, Amos supplied to BMO a balance sheet dated September 30, 2014 (the "2014 Statement") in which he purported to disclose all of his assets and liabilities. A copy of the Application, together with the 2014 Statement, is attached to this Complaint and incorporated herein as "Exhibit 1."

23. Amos falsely omitted millions of dollars in personal liabilities on the 2014 Statement and Application. Specifically, Amos failed to disclose to BMO that he was personally obligated to Fifth Third for sums due under the Fifth Third Loan via his promises in the Fifth Third Guaranty.

24. In addition, Amos failed to disclose on the Application and the 2014 Statement that he was personally liable for loans made by J.P. Morgan Chase Bank N.A. ("Chase") to Amos Media and Amos Development. Upon information and belief, as of September 30, 2014, Amos was personally liable for debts owed by Amos Development and Amos Media in excess of $1 million dollars to Chase.

25. In addition to the omissions described in Paragraphs 23-24 of this Complaint, Amos grossly overrepresented his ownership interests in Amos Media, Amos Press, Rainy Day and Physika, and the value of his ownership interests in said entities.

26. The 2014 Statement and Application were materially false due to Amos's omissions and gross misstatements of fact described in Paragraphs 23 through 25 of this Complaint.

27. When he submitted the 2014 Statement and Application to BMO, Amos knew or should have known that the information contained therein was false or materially misleading. Amos acted with the intent to deceive BMO regarding his creditworthiness, either through intentional omissions and misrepresentations of facts or through a reckless disregard for the truth.

28. BMO reasonably relied on the truthfulness and completeness of Amos's statements contained in the 2014 Statement and Application when it approved Amos's application for a $1,000,000.00 loan in January 2015. BMO approved the application for the loan to Amos believing that Amos's liabilities were materially less than what they actually were, and that Amos's representations regarding his assets were true and correct.

29. Had BMO known of Amos's actual personal liabilities and true value of Amos's assets, it would not have approved Amos's request for loan of $1,000,000.00.

30. To document the $1,000,000.00 loan, Amos and BMO executed a Line of Credit Agreement (the "LOC Agreement") dated February 10, 2015. A true and correct copy of the LOC Agreement is attached to this Complaint and incorporated herein as "Exhibit 2".

31. In conjunction with the LOC Agreement, Amos executed and delivered to BMO a Promissory Note dated February 10, 2015 (the "Note") in the principal amount of $1,000,000.00. A true and correct copy of the Note is attached to this Complaint and incorporated herein as "Exhibit 3".

32. Pursuant to the terms of the LOC Agreement and Note, BMO made available to Amos a credit line of $1,000,000.00 (the "Credit Line").

33. Pursuant to the terms of the LOC Agreement, BMO could terminate advances to Amos if BMO, in good faith, determined that a material and adverse change occurred in the financial condition of Amos. (Ex. 1, LOC Agreement, P. 4).

34. From February 10, 2015 through July 21, 2015, BMO advanced $700,000.00 pursuant to the terms of the LOC Agreement and Note.

35. On or before June 23, 2015, Amos requested an increase in the amount of the Credit Line. In conjunction with said request, Amos represented to BMO that the purpose of the Line of Credit was working capital and to purchase his father's alleged interest in Physika.

36. On July 6, 2015, the Fifth Third Loan matured.

37. On July 15, 2015, BMO internally approved Amos's request for an increase of the Credit Line, and approved a $1,000,000.00 increase to the Credit Line, which would have the effect of increasing availability of the Credit Line to $2,000,000.00.

38. BMO reasonably relied on Amos's statements regarding his assets and liabilities contained in the 2014 Statement and Application when it approved Amos's request to increase the Credit Line.

39. On July 22, 2015, Amos and BMO agreed to modify the LOC to increase the Credit Line up to $2,000,000.00, pursuant to the terms of a certain "First Amendment to Loan Documents". A true and correct copy of the First Amendment to Loan Documents (the "First Amendment") is attached to this Complaint and incorporated herein as "Exhibit 4." In conjunction with the First Amendment, Amos executed and delivered to BMO a Promissory Note dated July 22, 2015 (the "Revised Note") in the principal amount of $2,000,000.00. A true and correct copy of the Revised Note is attached to this Complaint and incorporated herein as "Exhibit 5."

40. Pursuant to the terms of the LOC Agreement, as amended, , the Revised Note contained a maturity date of January 15, 2016 (the "Maturity Date"), at which time Amos promised to pay the entire amount outstanding under the Revised Note and LOC Agreement to BMO.

41. On August 18, 2015, attorneys for Fifth Third issued to Amos a formal demand (the "Fifth Third Demand") for payment of sums due under the Fifth Third Guaranty. The Fifth Third Demand required Amos to make payment of all sums due under the Fifth Third Guaranty within 10 days of August 18, 2015.

42. Because Amos failed to make payment of sums due under the Fifth Third Guaranty, Fifth Third filed a lawsuit against Amos on September 3, 2015, in the United States District Court for the Northern District of Illinois. Said lawsuit, designated as Case No. 15-cv-07778 (the "Fifth Third Case"), sought money damages against Amos in excess of $1,072.838.99.

43. On September 20, 2015, Amos was personally served with a summons and complaint filed in the Fifth Third Case.

44. On September 30, 2015, ten days after Amos was served with the complaint and summons in the Fifth Third Case, Amos submitted to BMO a written Financial Statement (the "2015 Statement") at BMO's request. Amos represented to BMO that the 2015 Statement

disclosed all of his assets and liabilities. A copy of the 2015 Statement tendered to BMO is attached to this Complaint and incorporated herein as "Exhibit 6."

45.    Amos omitted material liabilities on the 2015 Statement that he knew existed when he tendered the 2015 Statement to BMO. Specifically, he failed to disclose the debts he owed to Fifth Third and Chase.

46.    Amos grossly overstated the value of his shares of stock in Amos Press, Amos Media, and Rainy Day in the 2015 Statement.

47.    When he submitted the 2015 Statement, Amos acted with intent to deceive BMO regarding his creditworthiness, either through intentional omissions or misrepresentation of fact or through a reckless disregard for the truth.

48.    If Amos had truthfully disclosed to BMO the debts owed to Fifth Third and Chase and the existence of the Fifth Third Lawsuit in the 2015 Statement and an accurate value of his ownership interest in the Amos Media, Amos Development and Rainy Day, BMO would have exercised its rights under the LOC Agreement to cease advances on the Line of Credit.

49.    Between October 1, 2015 and December 8, 2015, BMO advanced $1,000,000.00 to Amos pursuant to the terms of the LOC Agreement and Revised Note. Altogether BMO advanced $1,850,000.00 to Amos after the Revised Note was executed in July 2015.

50.    On December 3, 2015, Amos and Fifth Third executed a settlement agreement dated December 3, 2015 (the "Settlement Agreement") which resulted in the dismissal of the Fifth Third Case by Fifth Third. The Settlement Agreement obligated Amos and Rainy Day to make a payment of $1,084,501.89 plus interest (the "Settlement Amount") on or before October 17, 2016. The Settlement Amount was split into 4 payments of $100,000.00 with one final payment due on October 17, 2016.

51. Amos used the funds advanced under the Line of Credit to make the payments due under the Settlement Agreement to Fifth Third.

52. In December 2015, BMO began another evaluation of Amos' liabilities and assets to determine if the Maturity Date should be extended.

53. In an effort to determine the creditworthiness of Amos, BMO reasonably relied on Amos's statements regarding his assets and liabilities contained in the 2015 Statement when it approved an extension of the Maturity Date.

54. Based on the written statements in the 2015 Statement, BMO approved an extension of the Maturity Date to April 30, 2016. BMO approved the extension of the Maturity Date reasonably believing that Amos's assets were worth more than they were actually worth and his liabilities were materially less than what they actually were, based upon Amos's material omissions regarding his debts to Fifth Third and Chase.

55. On February 11, 2016, BMO and Amos executed a certain "Second Amendment to Loan Documents", which extended the maturity date of the Revised Note to April 30, 2016. A true and correct copy of the Second Amendment to Loan Documents (the "Second Amendment") is attached to this Complaint and incorporated herein as "Exhibit 7." The Second Amendment extended the Maturity Date of the Revised Note to April 30, 2016.

56. Amos failed to make payment of all sums due under the Revised Note by April 30, 2016.

57. Amos breached the Revised Note and the LOC Agreement by failing to make payments when due.

58. As of February 13, 2018, the amount of principal, accrued interest and late fees due under the Revised Note and LOC Agreement was $2,294,398.65 which includes $ 1,947,631.76 in unpaid principal, $ 238,003.31 in accrued interest under the Revised Note, and $ 108,763.58 in

late fees due under the Revised Note and LOC Agreement. In addition, interest accrues at an amount of $405.76 per diem after February 13, 2018.

59. In addition to the amounts stated in Paragraph 58 of the Complaint, BMO has incurred attorneys' fees and costs related to the collection of amounts due under the Revised Note and Amos promised to pay said sums to BMO.

60. As of February 13, 2018, BMO has been damaged in an amount greater than $2,294,398.65 due to Amos's breach of the Revised Note and LOC Agreement plus attorneys' fees and cost. Furthermore, interest and attorneys' fees continue to accrue after February 13, 2018

61. BMO has performed all its obligations under the Revised Note and Line of Credit Agreement, namely it advanced money to Amos pursuant to Amos's requests.

WHEREFORE, Plaintiff BMO Harris Bank N.A., requests that pursuant to 11 U.S.C. 523(a)(2)(B), the debt owed to BMO Harris Bank N.A. from John Amos be determined to be non-dischargeable and to enter a money judgment against John Amos in favor of BMO Harris Bank N.A. in the amount of $ 2,294,398.65, plus per diem interest accrual of $405.76 after February 13, 2018 and attorneys' fees and costs associated with collection of amounts due under the July 22, 2015 Promissory Note and Line of Credit Agreement.

## COUNT II
Objection to Discharge - 11 U.S.C. 727(a)(4)

62. BMO restates and realleges Paragraphs 1 through 61 of this Complaint as if fully restated herein.

63. Amos filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 28, 2017 (the "Petition Date").  Amos's Bankruptcy Schedules were filed on October 11, 2017. A true and correct copy of the Amos's Petition, Schedules, and Statement of Financial Affairs filed on September 28, 2017 and October 11, 2017 is attached to this Complaint and

incorporated herein as "Exhibit 8." Amos later filed an Amended Statement of Financial Affairs and Amended Schedule A/B on December 21, 2017, a copy of which is attached to this Complaint as "Exhibit 9."

64. The Petition, Schedules, Statement of Financial Affairs, Amended Statement of Financial Affairs and Amended Schedule A/B were signed under penalty of perjury by Amos.

65. Section 727(a)(4)(A) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

66. Amos made numerous omissions and false statements under oath in the Schedules in both the Statement of Financial Affairs ("SOFA") and Amended Statement of Financial Affairs ("Amended SOFA"). These false statements and omissions include, but are not limited to:

    a. Amos failed to disclose his interest in the Authentico Mexican Restaurant & Bar in Lake Forest, Illinois. Amos failed to disclose his interest in Authentico Management, Inc., the manager of Authentico, LLC and upon information and belief, his interest in Authentico, LLC.

    b. Amos failed to disclose that he transferred at least $22,000.00 to Rainy Day in the year preceding the Petition Date, as he was directed to by Questions 7 and 8 of the SOFA and the Amended SOFA.

    c. Amos failed to disclose the alleged transfer of the Land Rover to his daughter Kelly Amos in response to Question 18 of the SOFA.

    d. Belatedly, Amos disclosed the transfer of the Land Rover to Kelly Amos in the Amended SOFA but asserted under oath that he was paid $33,801.00 for the sale of the transfer of the Land Rover to Kelly Amos. Based upon the records of his account at J.P. Morgan Chase Bank (the "Chase Account") provided by Amos, Amos was not

paid $33,801.00 for the transfer of the Land Rover by Kelly Amos on June 9, 2017, or any date following June 9, 2017. Furthermore, Amos paid the Vehicle Use Tax imposed by the State of Illinois, despite that obligation being the responsibility of Kelly Amos, the alleged purchaser of the Land Rover.

e. Amos failed to disclose that he provided a financial statement to Wells Fargo within 2 years before the Petition Date in response to Question 28 of the SOFA and Amended SOFA.

f. Amos failed to disclose that he provided gifts totaling more than $600.00 to Kelly Amos and Jordan Amos, as required by Question 13 of the SOFA and Amended SOFA.

67. The omissions and misrepresentations detailed in Paragraph 66 was made with fraudulent intent, or with a reckless knowledge of the truth or falsity of the representations and omissions made in the Schedules, Amended Schedule A/B, SOFA and Amended SOFA.

68. The misrepresentations and omission made in the Schedule, Amended Schedule A/B, SOFA and Amended SOFA related materially to the Amos's bankruptcy case.

WHEREFORE, Plaintiff BMO Harris Bank N.A, requests that pursuant to 11 U.S.C. §727(a)(4)(A), that John Amos be denied a discharge.

## COUNT III
## OBJECTION TO DISCHARGE UNDER 11 U.S.C. 727(a)(2)(A)

69. BMO repeats and re-alleges Paragraphs 1 through 68 of this Complaint as if fully re-written herein.

70. Amos was the owner of the Land Rover from 2015 through approximately June 9, 2017.

71. Amos transferred the Land Rover to his daughter Kelly Amos for no consideration.

72. At the time he traded in the Land Rover, Amos had at least $30,000.00 in equity in the Land Rover.

73. Amos transferred the Land Rover in order to hinder, delay and defraud creditors like BMO.

74. Amos transferred the Land Rover in order to hinder, delay and defraud the bankruptcy estate.

75. The transfer of the Land Rover by Amos was done within a year of the Petition Date.

76. During the year preceding the Petition Date, Amos transferred at least $22,000.00 to Rainy Day for the purpose of hiding and concealing those funds from creditors like BMO and the estate created by the filing of his bankruptcy petition.

77. During the year preceding the Petition Date, Amos engaged in a series of actions that included writing checks out to "CASH" and making large withdrawals of cash from the Chase Account. These transactions included transactions that occurred within two weeks of the Petition Date, and based upon the cash disclosed in the Chase Account in the Schedules, was spent by Amos to avoid having to turnover said funds to the bankruptcy estate.

78. Within a year preceding the Petition Date, Amos paid his wife's credit card debts using funds contained in Amos's Chase Account. Specifically, on September 22, 2017 - less than a week before the Petition Date - Amos paid $24,783.00 to the issuer of Sherry Amos's Neiman Marcus credit card and $59,308.00 to MasterCard. The funds used to make those payments were non-exempt assets of Amos.

79. Amos paid off his wife's credit card debts to hinder, delay and defraud the bankruptcy estate and creditors like BMO, as Amos's intention in paying off those cards was to ensure that he, and his family, could continue to utilize credit on those cards and continue to support his family's extravagant lifestyle.

WHEREFORE, Plaintiff BMO Harris Bank N.A., requests that pursuant to 11 U.S.C. §727(a)(2)(A), Debtor/Defendant John Amos be denied a discharge.

Dated: February 15, 2018

                                  Respectfully Submitted,

                                  BMO Harris Bank N.A.

                                  By: /s/Daniel S. Rubin
                                  One of its Attorneys

Scott C. Frost (ARDC #6208276)
Daniel S. Rubin (ARDC #6293669)
Howard & Howard Attorneys PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, IL  60604
312/456-3448
312/939-5617 Fax
drubin@howardandhoward.com

4820-4138-8637, v. 1